ABSALOM BACKUS, JR., ET AL. v. GEORGE GARTNER, CIRCUIT JUDGE OF WAYNE COUNTY.

*Eminent domain—Authority of circuit judge to set aside proceedings—New jury—Appeal—Damages.*

1. A circuit judge has no power to set aside the award and report of a jury in condemnation proceedings, and order a new trial

or inquisition before a new jury, where the objections to the confirmation of the report are not based on jurisdictional defects.

2. The provision in section 10 of chapter 93, How. Stat., that the court, as to the confirmation of the report of the commissioners or jury in condemnation proceedings instituted under said chapter, shall have the powers usual in other cases, refers to the powers of courts in the confirmation of reports made to them by bodies or persons authorized by law to make them, in accordance with the known practice of such courts.

3. The practice in chancery causes with reference to the confirmation of reports made by the circuit court commissioner or other officer of the court extends merely to setting aside the report for exceptions thereto found on the facts stated therein or in the accompanying documents and proofs; and there is nothing in chancery practice which recognizes the setting aside of the report and referring the matter to a new or different commissioner.

4. Where on an appeal to the Supreme Court from the confirmation of the report of a jury in condemnation proceedings a new appraisal is directed to be made before a new panel, the common-law writ of *certiorari* lies, if taken in proper season, to correct grave errors committed by the jury in their proceedings, affecting injuriously the rights of the parties, but such correction will not extend to the final facts to be adjudicated upon by the jury, namely, the necessity for taking the property for the public use, and the just damages or compensation to be made therefor.

*Mandamus.* Argued November 17, 1891. Granted November 19, and opinion filed December 21, 1891.

Relators applied for *mandamus* to compel respondent to vacate an order made by him setting aside the award of a jury in condemnation proceedings and granting a new trial, and for an order directing the confirmation of the verdict of the jury. The facts are stated in the opinion.

*Dickinson, Thurber & Stevenson* and *Edwin F. Conley,* for relators.

*F. A. Baker,* for respondent.

CHAMPLIN, C. J. This is a petition asking for a *mandamus* to compel the circuit judge of Wayne county to set aside an order made by him setting aside the award of a jury in condemnation proceedings and awarding a new trial, and for an order directing the confirmation of the verdict of the jury.

The petition shows that on the 24th of January, 1891, the Fort Street Union Depot Company, a railroad corporation created and existing under the laws of the State of Michigan, filed its petition in the circuit court for the county of Wayne, in due form, to acquire title as against the relators for the uses of an elevated railroad upon River street in the city of Detroit, a public highway of said city, in front of the relators' property abutting on said street, and described in the petition so filed, in accordance with chapter 93 of Howell's Annotated Statutes, entitled "Union Railroad Station and Depot Companies," and especially under subdivision 3 of section 3461 of said statutes; that in and by said petition the relators are made respondents, a copy of which petition is set forth, and to which reference is made; that such proceedings were duly had, in accordance with the statute, that the jury were duly impaneled to determine whether or not public necessity required the taking of the property of the relators in said street for the purposes of said railroad company and the public use, and, if so, to appraise and determine the damages and compensation to be allowed the relators therefor; that an inquisition into said matters submitted to them was entered upon by the jury, and they made and filed their report in writing on the 18th day of March, 1891, certifying that they were unable to agree either as to the public necessity or as to the compensation; that thereafter another jury, on the 10th of June, 1891, were impaneled, and continued their inquest until the 16th day of

July, 1891, when they filed their report, including the testimony, from which it appears that they awarded damages as compensation to the relators, as follows: To Absalom Backus, Jr., $17,850; to A. Backus, Jr., & Sons, $78,293; that on the following day the railroad company applied to the said circuit judge for an order staying proceedings 30 days to enable it to move for a new trial, which motion was granted, and the order entered staying proceedings; that on August 15, 1891, the railroad company, through its counsel, filed in said matter a motion to vacate and set aside the verdict, award, and report of the jury in this cause, and grant a new trial on the questions of public necessity and of the compensation or damages which ought justly to be awarded to the respondents, a copy of which motion is annexed to the petition; that the relators presented to the court an objection and protest against any consideration of the motion by the court or judge, on the ground that the said judge had no jurisdiction or authority whatever to grant said motion or to entertain it, a copy of which objection and protest is annexed to the petition; that, in addition to said objection and protest, and expressly reserving the same without waiver, the relators also presented to the court and filed in said matter, together with said objection and protest, two affidavits of D. Farrand Henry, and one of Absalom Backus, Jr., tending to show that between the time of rendering said verdict and the filing of said motion for a new trial the said railroad company had entered upon and taken possession of the property sought to be condemned, without paying said award of said jury. Copies of the affidavits are annexed to the petition. The petition further states that the relators moved the court thereupon for a confirmation of said verdict and award, basing said motion not only on the files and records of the proceedings in said matter,

but upon the said affidavits. The relators show further to the Court that before the hearing of the motion, and in answer to one of the grounds thereof, charging that the jurors had partaken of lager-beer with their luncheon, they filed the affidavits of nine of said jurors that the verdict had been agreed upon before the said luncheon, and before partaking of the said beer, and before the said beer was brought into the room; that a copy of one of said affidavits of said jurymen, and which affidavit and the facts therein correspond to all the affidavits of said jurymen, is annexed; that the motion came on for hearing before the Hon. George Gartner, circuit judge, was argued, and on the 26th day of October, 1891, the said circuit judge in form granted said motion, and caused to be entered upon the records of the circuit court for the county of Wayne a formal order granting said motion, as follows:

"In this cause, the motion of said complainant for an order of the court setting aside the award heretofore made by the jury in said cause, and for the impaneling of another jury in said cause, having been heretofore argued and submitted, after due consideration thereon, it is ordered that the award heretofore made by the jury impaneled in said cause, and entered therein, be, and the same hereby is, set aside and held for naught; and it is further ordered that a new jury be impaneled in said cause, in accordance with the statute governing said proceedings.

"GEORGE S. HOSMER,
"Presiding Judge."

This order is dated October 26, 1891.

The motion above referred to, to vacate and set aside the verdict, is based upon the following grounds:

"1. The jury were not attended by a judge of this court, or by a circuit court commissioner, to decide questions of law and administer oaths to witnesses.
"2. The attorney for the respondents, taking advantage of the absence of a judge, did improperly, erroneously,

and falsely claim and pretend to and before said jury that the petitioner, the Fort Street Union Depot Company, has power under the statutes of this State to condemn a right of way for an elevated railroad along the margin of the property of the Michigan Central Railroad Company, on the south side of River street, and for that reason the jury ought to find that there is no public necessity for taking a right of way in, upon, and along said River street for the elevated railroad proposed by the petitioner; and thereby said attorney did, by repeated arguments and assertions to and before said jury, convince a number of said jury that the property of the Michigan Central Railroad Company could be condemned by the petitioner under existing statutes, so that when said jurymen came to yield on the question of necessity they were so biased and prejudiced against the petitioner that they insisted upon the most extravagant, exorbitant, and grossly excessive damages, to the great wrong and injury of petitioner.

"3. The attorney for the respondents, in opening their case to the jury, among other things, said to them: [Here setting out in the motion, at considerable length, the argument of the counsel before the jury upon the question of necessity, and his effort to make it appear that such necessity for using the street did not exist, for the reason that petitioner could condemn the property of the Michigan Central Railroad, adjoining the street, for such purposes. It is not necessary to set out the speech in this opinion.]

"4. The attorney for the respondent, on his cross-examination of the witness James B. Mulliken, put the following questions, for the purpose of leading said jury to believe that the petitioner could condemn the property of the Michigan Central Railroad Company, and that Mr. G. V. N. Lothrop, the general counsel of the Detroit, Lansing & Northern Railroad Company, had so advised that company:

"'Q. Who is the general counsel of the D., L. & N.?

"'A. Mr. Charles B. Lothrop.

"'Q. Before that, Mr. G. V. N. Lothrop?

"'A. He was formerly.

"'Q. That being the best route, was there ever any talk about the power of the said railroad company, wanting terminal facilities, to condemn Michigan Central ground?

"'*A.* Mr. Lothrop told me at one time there was no difficulty in doing that.

"'*Q.* Which Lothrop?

"'*A.* G. V. N. Lothrop.'

"5. Although it clearly appeared on the further examination of said witness, James B. Mulliken, and by the testimony of said G. V. N. Lothrop, that the advice and opinion of said Lothrop was that the property of the Michigan Central Ra lroad Company, or of any other railroad company, could not be condemned without additional legislation, the attorney for said respondents did claim and pretend to and before said jury that under the advice and opinion of said Lothrop the petitioner could condemn a right of way along the margin of the Michigan Central property, on the south side of River street."

The sixth objection is based upon the argument of the respondents' counsel before the jury at the close of the testimony for the petitioner. It is not necessary to insert the argument here.

The seventh objection is also based upon the argument of the counsel for the respondents who assisted the attorney on the trial before the jury, and it is not necessary to advert upon or refer to it here.

The eighth objection is based upon the argument and statement of the attorney for respondents with reference to testimony introduced, and it is not necessary to advert to it further.

The ninth is also based upon the closing argument of the counsel before the jury.

The tenth objection is also based upon the closing argument before the jury, which is set out at length.

"11. The jury erred in refusing to receive the testimony of the witness Phillip C. Miller, offered by the petitioner in rebuttal, to show that the dust-arrester used by the respondents is not as good as those generally in use, and that by a small outlay the alleged fire risk resulting to the premises from said dust-arrester and the proposed elevated railroad in River street could be wholly done away with.

"12. The jury erred in refusing to permit the following question to be put to the witness Phillip C. Miller:

"'Do you know of any instances where the Backus dust-arrester has been put in, and has been taken out, and something else substituted?'

"13. The jury erred in refusing to permit the following question to be put to the witness Phillip C. Miller:

"'Will you state whether the Backus dust-arrester is in general use at the present time.'

"14. The jury erred in refusing to permit the following question to be put to the witness Phillip C. Miller:

"'State whether or not it would be practicable to close up the lattice work that is on the Backus dust-arrester on the roof, and put in other openings, so as to avoid the danger from sparks.'

"15. The jury erred in refusing to permit the witness Frank H. Mackintosh to testify to the amount of damages paid by the elevated railroad in New York for injuries to the fee to the Martine property.

"16. The jury erred in refusing to permit the following question to be put to the witness Jeremiah Pangborn:

"'What effect did the elevated railroad have upon the abutting property?'

"17. The jury erred in refusing to receive the testimony of Col. Frank J. Hecker and William F. Dwight relative to dust-arresters and the handling of timber by tramways, offered by the petitioner in rebuttal.

"18. The jury erred in refusing the testimony offered by the petitioner in rebutal to show that a large number of people in Detroit are using the metallic dust-arresters, and that they are better and safer than the Backus dust-arrester.

"19. The damages awarded to the respondents by the jury are grossly extravagant, exorbitant, and excessive.

"20. The damages awarded by the jury to the respondents are so excessive, unwarranted, and unjust as to show that the jury were actuated by passion or prejudice.

"21. The damages awarded are unwarranted by, and are against the weight of, the evidence.

"22. The jury retired to consider their verdict in charge of the officer appointed by the court to attend them, and while they were so considering their verdict they were, without the consent of the court or said officer or the parties, supplied with and drank twelve pint bottles of intoxicating malt liquor, commonly known as 'lager-beer,' and the grossly extravagant and outrageous awards made were the result of the intoxication or exhilaration caused thereby.

"23. The proceedings before said jury, and the awards

made, are in many other respects irregular, illegal, and unjust."

Upon the filing of this petition we issued an order to show cause why a *mandamus* should not be issued. In response to this order the learned circuit judge answers, and says:

"1. Respondent admits that the Fort Street Union Depot Company, on the 24th day of January, 1891, filed in the circuit court for the county of Wayne a petition to condemn a right of way for the construction of an elevated railroad upon and along River street in the city of Detroit, in front of the property of relators, and that a copy of said petition is annexed to the petition in this cause. He admits that a jury were impaneled, and that they were unable to agree.

"2. He admits that a second jury were impaneled in said cause, and that they agreed upon a report and verdict, a copy of which is annexed to the relators' petition. A copy of the testimony and proceedings referred to in and reported to the court with said report and verdict is filed with and made a part of this answer. Upon the filing of said report and verdict the counsel for petitioner in said cause applied for and was granted 30 days in which to move to vacate said verdict and move for a new trial. Said order was granted for the purpose of giving the counsel a reasonable time to make the necessary papers on which to oppose the confirmation of the report and verdict. On the 15th of August, 1891, the counsel for the said petitioner filed and served the motion, a copy of which is annexed to the relators' petition. When said motion came on to be heard the said respondents filed a paper claiming that the court had no jurisdiction or authority to review, reverse, or vacate said verdict and award, and in which paper respondents also claimed that the said petitioner had since the said verdict entered upon and possessed the property and premises which were sought to be condemned; and in support of this said last proposition said respondents filed two affidavits by D. Farrand Henry, and one by Absalom Backus, Jr. Copies of the papers so filed and the affidavits are annexed to the relators' petition. In answer to said affidavits the petitioner, before said motion was submitted to the court, filed a counter-affidavit of Charles H. Ellis. Said affidavit is

not referred to in the relators' petition. A copy thereof is annexed to and made a part of the answer.

"3. In connection with the proceedings aforesaid, and before said motion was submitted to the court, the respondents duly moved the court for a confirmation of the said verdict and award. Said respondents also filed the affidavits of a number of the jurymen who rendered said verdict. A copy of one of said affidavits is annexed to the petition of the relators.

"4. All the matters aforesaid came on to be heard before this respondent, and were duly argued before him by counsel; and upon the 26th day of October, 1891, this respondent, delivered and filed an opinion, a copy of which is herewith filed and made a part of this answer and return. An order was entered vacating said verdict and award, and ordering a new jury to be impaneled in said cause. A copy of said order is annexed to the petition of relators.

"5. The testimony and proceedings reported to the court by the jury hereinbefore referred to are also referred to in answer to the petition of relators from the ninth to the thirteenth paragraphs thereof, inclusive. Respondent has no knowledge of the testimony taken and the proceedings had before the said jury, except as the same appears in the stenographic report thereof as so made to the court by said jury; but, answering said paragraphs upon the information so obtained, this respondent shows, paragraph by paragraph, as follows:" The answer then sets up certain facts respecting the operation of the elevated railroad, the obstructions to the street and sidewalk, the use to which the Union Depot is to be put, and the grade of the elevated road in front of the property, which he states will be a 4 per cent. grade, or about 25 feet to the mile; that the elevated railroad will be reached by a 1 per cent. grade, or about 52 feet to the mile, but the grade will cease within about 350 feet of the relators' premises. He sets up the frontage of the property of the relators and the ownership, and then describes the planing-mill, and states that Absalom Backus, Jr., testifies that the mill, exclusive of the land, cost about $150,000; that no testimony except that relating to the fire risk hereinbefore referred to was produced before said jury fairly tending to show, or which would authorize the jury in finding, that the elevated road would completely destroy the property for the purposes

of a planing-mill business, or that the relators would be obliged, because of the railroad, to abandon that use of their property. He also sets up that testimony was introduced tending to show that the removal of the machinery to another location would involve a depreciation and loss of about 50 per cent.; that the fire risk and insurance rate on the property would be increased because of the proximity of the railroad; that relators would have to carry, to protect themselves, a larger amount of insurance than they otherwise would. He further states that the testimony did not tend to show that the injury to the property would be in excess of, or even equal to, the amount awarded by the jury. He further states that the testimony did not tend to show with respect to the injury to the relators in consequence of the construction of the elevated road; and he sets forth further in his answer the location, situation, and condition of other railroads, their depot grounds and yards, which it is not necessary to set out here in order to obtain an understanding of the questions which arise on this motion.

He also, in the sixth paragraph of his answer, sets forth that the record shows that the relators claimed before said jury that they had the affirmative of said issue, and the right to open and close the argument; that the jury requested the advice of this respondent as to this, and he advised them that relators did have such right, and the jury concluded to follow the same.

In the seventh paragraph he also cites what appears the testimony in reference to the proposed elevated railroad, which it is unnecessary to quote.

The eighth clause of the answer states that the jury were not attended by a circuit judge or circuit court commissioner, and, with the exception of the advice so given as aforesaid, there was no interference by the court or any of its officers with the proceedings and deliberations of the jury.

The ninth paragraph states that the grounds upon which the respondent vacated and set aside the award and verdict of the jury are fully set forth in the opinion which he filed at the time, and which is made a part of his return. The opinion is somewhat lengthy, covering 93 printed pages.

The only point which we deem it necessary to consider

in this application is whether, under the statute, the circuit judge has authority to set aside the award and report of the jury and to order a new trial or inquisition before a new jury, where the objections to the confirmation of the report are not based upon jurisdictional defects.

These proceedings were had under chapter 93, How. Stat. The proceedings to condemn property for the public use under this chapter are the same in every respect as those provided for in the general railroad law, being chapter 91, How. Stat. Section 9 of chapter 93 provides:

"At any time before the report of the jury or commissioners shall be made to the court, it shall be competent for the company, after sufficient cause has been shown, and with leave of the court, to discontinue all pending proceedings in any case, and to institute new proceedings at any time thereafter; but the company in all such cases shall pay all the costs of all proceedings so discontinued, with an attorney fee, to be taxed as in cases at law."

Section 10 provides:

"On such report being made by the commissioners or jury, the court, on motion, shall confirm the same on the next or any subsequent day when in session, unless for good cause shown by either party; and, when said report is confirmed, said court shall make an order containing a recital of the substance of the proceedings in the matter of the appraisal, and a description of the real estate or property appraised, for which compensation is to be made, and shall also direct to whom the money is to be paid, or when and where it shall be deposited by the company. Said court, as to the confirmation of such report, shall have the powers usual in other cases."

It is contended by counsel in behalf of respondent that under this section of the statute the court has authority not only to set aside the award of the jury, but also to set aside the panel which made the award,

and direct that a new jury be impaneled, who shall proceed under the statute to make a new inquisition as to the necessity, and also as to the compensation to be paid. The language of the statute is that he "shall confirm the same on the next or any subsequent day when in session, unless for good cause shown by either party;" and it further provides that "said court, as to the confirmation of such report, shall have the powers usual in other cases." There is nothing in this section which states that the court shall have power to set aside the panel of jurors or commissioners appointed by the court, and direct that proceedings *de novo* shall be had upon the petition. It is silent as to the extent of the authority conferred except that it states that the court, "as to the confirmation of such report, shall have the powers usual in other cases." What does the term "powers usual in other cases" refer to? Evidently it must refer to the powers of courts in the confirmation of reports made to such courts by some bodies or persons authorized by law to make them, in accordance with the known practice of the court. Section 7383, How. Stat., provides that when a cause is referred to referees—

"On the hearing of such bills of exceptions, or upon exceptions to the report, or both, the circuit court may confirm or set aside such report, in whole or in part, and, in its discretion, refer the case back to the referees, or enter judgment thereon; and, in case that judgment shall be entered thereon, error may be brought on such judgment as in other cases, in which case the bill of exceptions, if any, the report, and the exceptions to the report, shall be considered as forming a part of the record in the case, and the finding of facts by the referees shall be treated as a special verdict."

The practice in chancery causes with reference to the confirmation of reports made by the circuit court commissioner or other officer of the court extends merely to setting aside the report for exceptions thereto founded

on the facts stated therein or in the accompanying documents and proofs. There is nothing in chancery practice which recognizes the setting aside of the report and referring the matter to a new or different commissioner.

We have not overlooked the statute with reference to auditors (How. Stat. § 7390), in which it is enacted that—

"The court may, for any sufficient reason, discharge the auditors and appoint others; and they may also recommit the report for revision or further examination to the same or to other auditors."

The proceeding before auditors is not analogous to the proceedings in question here, nor to those of referring cases to referees. The auditors act merely in making up accounts and preparing evidence. Their report does not determine the controversy, but is merely used as evidence by either party, if there be no legal objections to it; and consequently we think the "other cases" referred to is not that of auditors. This will be more apparent when we consider the next section of the act, being section 11, which provides:

"Within twenty days after the confirmation of the report of the commissioners or jury, as above provided for, either party may appeal, by notice in writing to the other, to the Supreme Court, from the appraisal or report of the commissioners or jury. Such notice shall specify the objections to the proceedings had in the premises, and the Supreme Court shall pass on such objections only, and all other objections, if any, shall be deemed to have been waived. Such appeal shall be heard by the Supreme Court at any general or special term thereof, on notice thereof being given according to the rules and practice of the Court. On the hearing of such appeal the Court may direct a new appraisal before the same or new commissioners or jury, in its discretion. The second report shall be final and conclusive upon all parties interested. If the amount of the compensation to be allowed is increased by the second report, the difference shall be a lien on the land appraised, and shall be paid by the

company to the parties entitled to the same, or shall be deposited as the court shall direct, and in such case all costs of the appeal shall be paid by the company; but, if the amount is diminished, the difference shall be refunded to the company by the party to whom the same may have been paid, and judgments therefor and for all costs of the appeal shall be rendered against the party so appealing. On the filing of the report, such appeal, when made by any claimant of damages, shall not affect the said report as to the right and interest of any party except the party appealing, nor shall it affect any part of said report in any case except the part appealed from, nor shall it affect the possession of such company of the land appraised; and when the same is made by others than the company it shall not be heard except on a stipulation of the party appealing not to disturb such possession during the pendency of such proceedings."

It will be noticed that this provision with reference to the appeal to the Supreme Court and their power over the report of the jury is quite different from that contained in section 10, with reference to the authority of the circuit judge upon a motion to confirm the report. It would not appear reasonable that the Legislature intended to invest the circuit judge with power to set aside the panel or the commissioners, and to direct new proceedings to be taken before another panel of jurors or commissioners, when nothing is said with reference to the exercise of such power by the circuit court, and it is expressly granted to the Supreme Court in the section above quoted. The provision then is limited to the first appeal; a second report of the jury or commissioners is final and conclusive upon all parties; showing that the plain intent of the Legislature was, and as must necessarily be the case with these summary proceedings to condemn land for the public use, that the proceedings should be not only summary, but, in some respects, informal and expeditious. If the circuit judge has the power to set aside a report for the reason that he thinks the dam-

ages are excessive and exorbitant, or that they are too small in amount, he may likewise, if in his opinion good cause is shown, set aside the award, and that, too, without reference to the number of times he so acts, because he does not conceive under the testimony that the taking of the property is necessary to the public use. Both of these causes, by the Constitution, are vested in a special tribunal, to wit, commissioners appointed by a court of record or by a jury. They are specially invested with the power to determine two facts:

  1. Whether it is necessary to take the property for the public use.

  2. The just damages or compensation to be made.

And no court is provided with any authority to pass upon those two questions except that tribunal to which it was especially confided by the Constitution.

There can be no doubt, if there should appear in the course of the proceedings good cause for setting aside the report because the jury had not observed the substantial rights of the parties, or had followed erroneous rules for the estimation of damages, or had admitted testimony plainly irrelevant and immaterial, which probably affected their judgment, the circuit court might, the same as courts in other cases, upon a motion to confirm the report of the body or officer whose duty it was to take and pass upon testimony, if errors have been committed, set aside the report and refer it back to the body or officer, with directions correcting the error. And even in a case where a new panel is ordered by the Supreme Court we do not think that the party would be remediless if grave errors were committed by the jury in their proceedings, affecting injuriously the rights of the parties. The common-law *certiorari* would lie to this Court to correct such errors, if taken in proper season.

but such correction would not extend to the final facts to be adjudicated upon by them, viz., as to the necessity and the compensation.

Section 13 of the act provides that—

"The court shall have power at any time to amend any defect or informality in any of the special proceedings authorized by this act, as may be necessary, or to cause new parties to be added, and to direct such further notices to be given to any party in interest as it deems proper; also to appoint other commissioners in the place of any who shall die, or refuse or neglect or are unable to serve, or who may leave or be absent from the State."

This seems to cover all the contingencies which it was necessary to provide for in order that the proceedings might be prosecuted to a termination.

We do not decide that there was not good cause shown to the court sufficient to warrant him in setting aside the award and referring the matter back to the same jury. The question is not raised in that form, and we do not pass upon it. The railroad company, in its motion, did not ask it; and we have no reason to suppose that it would have been contented to have the question referred back to the same jury, inasmuch as it asks that the panel be set aside entirely and a new jury impaneled.

For the reasons above stated the *mandamus* should issue as prayed for.

The other Justices concurred.