# JUNE TERM, 1892.

THE FORT STREET UNION DEPOT COMPANY v. ABSALOM BACKUS, JR., ET AL.

[See 89 Mich. 209.]

| | |
|---|---|
| 92 | 33 |
| 103 | 557 |
| 103 | 637 |

| | |
|---|---|
| 92 | 33 |
| 105 | 88 |

| | |
|---|---|
| 92 | 33 |
| f 119 | 297 |

*Eminent domain—Union depot companies—Award of jury—Power of circuit court—Payment of damages—Appeal— Waiver—Condemnation of property of railroad companies.*

1. The court before which proceedings are had upon the question of confirming or setting aside the findings and award of a jury in condemnation proceedings may set aside the award, and order a new trial before a new jury, upon the following grounds:

*a*—For fraud or misconduct of the jury affecting the rights of the parties.

*b*—For gross errors or mistakes of the jury.

*c*—For the erroneous rejection or admission of testimony affecting the rights of the parties.

*d*—For errors of such an extraordinary character or grossness as furnish a just inference of the existence of undue influence, partiality, bias, and prejudice, or unfaithfulness in the discharge of the duty imposed.

*e*—When it is apparent that the damages awarded are either inadequate or excessive.

The manner of bringing the necessary facts to the attention of the court must be left largely to its discretion, but they may be presented by affidavit or by oral testimony, upon which the court is bound to act in determining the questions raised.

2. Where a petitioner in condemnation proceedings makes no request that the jury be attended by the circuit judge or circuit court

commissioner, the objection that the jury was not so attended will be deemed to have been waived.

3. Except in so far as the power is conferred by How. Stat. § 3357, there is no statute authorizing one railroad company to condemn the property of another railroad company except for a crossing.

4. The question whether any part of the land of a railroad company in or adjacent to its depot grounds is in actual use for depot or other purpose pertaining to the operation of its railroad, a negative answer to which is a condition precedent to its condemnation by another company under How. Stat. § 3357, can only be determined in a direct proceeding for that purpose, and it would be not only impracticable, but impossible, to try that question in a condemnation proceeding.

5. In proceedings to condemn a railroad right of way in a public street, the respondents, whose mill property fronted on said street, contended before the jury that there was no necessity for taking the street for such right of way, as the petitioner could lawfully condemn a strip of land belonging to another railroad company, and used by it for yard purposes, upon the opposite side of the street from respondents' property, and introduced testimony in support of such contention, and their counsel urged such alleged right in his argument before the jury. And it is held that such evidence and argument must have affected the jury in determining the amount of damages to be awarded to respondents, which the petitioner claimed was excessive, and that the jury should not have permitted the testimony to be given, or listened to arguments thereon.

6. The payment by a union depot company organized under chapter 93, How. Stat., of the award of damages made by the jury in condemnation proceedings instituted by the company, upon the order of the court on confirming such award, cannot affect the right of the company to appeal from such award, and to have the question of damages retried by another jury.

Appeal from Wayne. (Gartner, J.) Argued March 3 and 4, 1892. Decided June 10, 1892.

Proceedings to condemn land for union depot purposes, under Act No. 244, Laws of 1881 (How. Stat. chap. 93). Petitioner appeals from an award of $96,143 in favor of

respondents. Award set aside, and the question of damages ordered submitted to a new jury, to be impaneled according to the statute before the Wayne circuit court. The facts are stated in the opinion.

*F. A. Baker,* for petitioner and appellant.
*Don M. Dickinson,* for respondents.

LONG, J. This cause was before this Court at the October term, 1891, and an opinion filed December 21, which is reported in 89 Mich. 209.

That proceeding was for *mandamus* to compel the court below to set aside the order made by it granting a new trial, and to compel that court to confirm the award made by the jury. The case is entitled *"Backus v. Gartner, Circuit Judge."*

It appeared in that proceeding that a motion was made in that court by the petitioner in the present case to vacate and set aside the verdict of the jury. The circuit court set the verdict and award of the jury aside, and the *mandamus* was asked by the respondents to vacate that order, and to confirm the verdict. This writ was granted by this Court, and an order confirming the verdict and award by the jury entered in the court below. Twenty-three specific reasons were urged before the court below why this motion for a new trial should be granted, and those reasons are substantially set out in the opinion by this Court in that case, and need not be restated here, as those reasons, with others now set out in this appeal, are the objections to the proceedings upon which we are now asked to pass. In addition to the objections then made to the verdict and order of confirmation, objections Nos. 24 to 28, inclusive, are now added, as follows:

24. The Supreme Court erred in granting a writ of

*mandamus* in this case, having misapprehended and misunderstood the facts of the case and the law applicable thereto, and deprived the circuit courts of this State of a wise and wholesome power of jurisdiction vested in them by the Constitution and laws of this State.

25. Said writ of *mandamus* was improvidently granted.

26. To confirm said verdict against the deliberate judgment of the circuit court for the county of Wayne is in and by itself a violation of the Constitution and laws of this State.

27. During the trial before the said jury one of the stockholders of A. Backus, Jr., & Sons, knowingly, willfully, and corruptly paid to one of the jurors the sum of $130, for the purpose and with the intent of corruptly influencing him as a juror in said case. Said payment was made under the pretense that said stockholder was indebted to said juror in said amount, whereas in truth and in fact the indebtedness paid was the debt of another, and not a debt upon which said stockholder was liable, and was one upon which he had previously denied liability and refused to pay.

28. The circuit court erred in disregarding and overruling the above objections, and in entering an order confirming said award.

The only point decided in the *mandamus* case was whether, under the statute, the circuit court has authority to set aside the award and report of the jury, and to order a new trial or inquisition before a new jury, where the objections to the confirmation of the report are not based upon jurisdictional defects. The decision turned upon the construction of section 10, chap. 93, How. Stat. The language of this section is:

"On such report being made by the commissioners or jury, the court, on motion, shall confirm the same on the next or any subsequent day when in session, unless for good cause shown by either party. * * * Said court, as to the confirmation of such report, shall have the powers usual in other cases."

This Court gave construction to the language of that section, and held that—

"There is nothing in this section which states that

the court shall have power to set aside the panel of jurors or commissioners appointed by the court, and direct that proceedings *de novo* shall be had upon the petition; and that the term " powers usual in other cases" refers to " the powers of courts in the confirmation of reports made to such courts by some bodies or persons authorized by law to make them, in accordance with the known practice of the court."

We need not refer here to the reasons given by this Court for that ruling, as they are fully set out in the former opinion, to which reference is made.

We permitted, in the present appeal, a reargument of that question, for the reason that, should we find we were then in error, neither party will have lost any substantial right, as all the questions then presented are now before us for review, and this Court, under the statute, possesses ample power to correct any errors which may be found in the record and proceedings. The motion for *mandamus* was argued before us at the October term last, and such consideration was not given it then as the interests now involved in the controversy demand. We have now listened to a reargument of the question then passed upon, and our attention has been called to several decisions, from which we conclude that the powers of the circuit courts in this class of cases were too much restricted by the former opinion.

Section 10 of the act under which the preceedings were had provides that, the report of the jury being made, the court, on motion, shall confirm the same, unless for good cause shown by either party. The statute does not point out for what particular cause or causes the court may refuse to confirm the award. While the jury, in such cases, are judges of the law and fact, yet, if it be made to appear to the court before confirmation of the award that the jury have based their verdict and award upon false principles, and substantial

justice has not been done in the premises, the court ought to refuse to confirm the findings. *Toledo, etc., Ry. Co. v. Dunlap,* 47 Mich. 466.

This question has been settled by this Court by former adjudications, which were overlooked in the *mandamus* case.

In *Marquette, etc., R. R. Co. v. Probate Judge,* 53 Mich. 217, commissioners were appointed to condemn certain lands for railroad purposes. They made their report, and filed it in the probate court. The petitioner filed a motion in that court to set aside the finding and report of the commissioners for the reasons:

1. That the damages and compensation were excessive and exorbitant.

2. That the commissioners included in the compensation a large amount of money for loss of profits in the fuse business during the interruption of the same, and for loss of wages while the factory should be stopped, and for loss of business to arise from the removal of the factory to another site, without any evidence on which to found the same.

3. That they allowed a sum of money to one of the owners of the property for the cost of removing therefrom.

4. That they grossly overestimated the value of the land, and the structures thereon.

5. That they allowed greater damages for the real estate than its whole value.

6. That they overestimated the value of the garden, trees, and shrubs.

7. That one of the commissioners, after being appointed, and before the finding, received privately from one of the respondents a written paper containing a list of the structures and other property upon the land, which stated the valuation of the same, and of the damages thereto, at the sum of $11,000; and that he was influenced thereby in his deliberations.

The motion was founded upon affidavits and other testimony produced in the probate court. This was met by a counter-motion from the attorneys of the respondents

to strike the affidavits from the files, and to refuse to hear testimony in opposition to the commissioners' report, on the ground that such affidavits and oral testimony of witnesses were incompetent and inadmissible on the hearing of the motion to set aside the report. The probate court denied the motion of petitioner, and granted that of the respondents. Before any motion was made for the confirmation of the report, the .petitioner applied to this Court for an order on the probate judge to show cause why he should not receive and consider, upon the motion to set aside the report, the affidavits and oral testimony offered, and why (should said report be confirmed) he should not set aside such confirmation for the purpose of such hearing. An order to show cause was granted in the case, and the return showed that the facts upon these points were correctly stated in the petition. It was said by this Court:

"The motion made by the petitioner to set aside the report was one proper to be made, and, if substantiated, would have furnished sufficient grounds for setting aside the report. The probate court has authority to set aside the report of commissioners for good cause shown. If the amount awarded is unreasonable, and indicates that it was the result of prejudice or partiality, or that the commissioners must have acted upon a wrong basis of estimating the damages, it is a good cause for setting aside the report." Citing *Chapman v. Groves*, 8 Blackf. 308.

This question came before this Court again in *Port Huron, etc., Ry. Co. v. Callanan*, 61 Mich. 12. In that case it was claimed that the commissioners' award was grossly inadequate, and did not indicate whether it included past as well as future damages. It was said:

"If the proceedings complained of are in most respects technically regular,—which we shall not decide,—we have no doubt that substantial wrong has been done. The confirmation of a report in these cases is not a matter

of strict right upon a regular record. If substantial reasons are shown against it by facts not in the record itself, the court has power to do justice and refuse confirmation, and, on appeal, the same power exists."

The learned circuit judge before whom the proceedings. for confirmation of the report of the jury in the present case were had, and who, by the mandate of this Court, confirmed the findings and award, filed an opinion in the case before us, in which he says:

"While the proceedings by and before the jury are not judicial, still the proceedings by and before the court up to the time of swearing the jury, as well as all proceedings after the filing of the report, are judicial in their character, and partake of the nature of ordinary proceedings in court, and are governed largely, if not absolutely, by the same rules and the same considerations applicable to judicial investigations and determinations. The one great difficulty attending the proceedings by and before the jury is that it is not ordinarily evident or ascertainable what the ruling or determination of the jury was upon questions raised before them; and in all such instances the presumption of the law is that they followed correct legal principles, and that as judges of the law they applied and followed the law correctly, and not erroneously. It cannot be contended that, as they are made by the law judges of the law, they have the right to disregard the law and all acknowledged and well-recognized legal principles. This was never contemplated by the Constitution or the statute, and it is sufficient to say that no case can be found which holds, or even recognizes, such a vicious and monstrous doctrine. When, however, the rulings of the jury are clearly apparent upon the face of the proceedings, then it may be found the duty of the court to consider, and, if necessary, review, such rulings; for it is the duty of the court to see that substantial justice has not been disregarded."

In support of this proposition the circuit judge cites the following cases: *Mich. Air Line Ry. v. Barnes*, 44 Mich. 226; *Toledo, etc., Ry. Co. v. Dunlap*, 47 Id. 461; *Detroit West., etc., R. R. Co. v. Crane*, 50 Id. 182; *Port*

*Huron, etc., Ry. Co. v. Voorheis,* Id. 510. We are satisfied that the cases referred to support the doctrine stated by the circuit judge.

This question has received consideration in the courts of other states. It is laid down as a rule by Lewis on Eminent Domain (section 522) that, under the authorities, any improper conduct on the part of the jury materially affecting the merits is sufficient cause for setting aside the report.

In *Re New York Cent., etc., R. R. Co.,* 64 N. Y. 60, it was held to be good cause for setting aside the report if there was any such carelessness or irregularity amounting to misconduct by which a party was harmed.

In *Re New York, etc., Ry. Co.,* 29 Hun. 604, it was held that the power and authority of the court to interfere was settled by *In re New York Cent., etc., R. R. Co.,* 64 N. Y. 60, and that such power is not restricted in the exercise of its general jurisdiction, and that the court has power, by virtue of its inherent jurisdiction, to set aside the report for good and sufficient reasons. Upon appeal this case was affirmed (reported in 93 N. Y. 385), and it was held a matter for the exercise of the discretion of the lower court.

The jury have large discretion, and when this has been abused the court will interfere and prevent an injury, and will set aside the report for accident or mistake. *Bourgeois v. Mills,* 60 Tex. 76.

The report will also be set aside for acting on erroneous principles. *In re New York, etc., Ry. Co.,* 63 How. Pr. 265.

In Iowa it is held that the report will be set aside for being against the evidence, or against the weight of evidence. *Walters v. Houck,* 7 Iowa, 72.

It is also settled by numerous decisions that the court, upon the motion for confirmation of the report, may

look into the matter of the action of the jury in receiving or rejecting testimony, and, if wrong rulings are made, substantially affecting the rights of the parties, the report will be set aside. *Wilson v. Railroad Co.*, 59 Ill. 273; *Fitchburg R. R. Co. v. Eastern R. R. Co.*, 6 Allen, 98; *Harding v. Inhabitants of Medway*, 10 Metc. (Mass.) 465; *Com. v. Court of Sessions*, 5 Mass. 435.

It is undoubtedly true that, where correct rules have been adopted by the jury, the award will not be set aside unless the amount of the verdict is palpably erroneous; but it cannot be doubted that under the authorities above cited, and the repeated rulings of this Court, the court before which proceedings are had upon the question of the confirmation or the setting aside of the findings and award of the jury may set the award aside—

1. If it is found by the court that there has been fraud or misconduct upon the part of the jury affecting the rights of the parties.

2. For gross errors or mistakes of the jury.

3. For the erroneous rejection or admission of testimony affecting the rights of the parties.

4. For errors of such extraordinary character or grossness as furnish a just inference of the existence of undue influence, partiality, bias, and prejudice, or unfaithfulness in the discharge of the duty imposed.

5. When it is apparent to the court that the damages awarded are either inadequate or excessive.

The method of proceeding by which these facts are brought to the attention of the court must be left very largely to the discretion of the court which is to hear and decide the motion for confirmation or to set aside the findings. The facts may be presented to the court by affidavits or by oral testimony, and upon which the court is bound to act in determining the questions raised. *Marquette, etc., R. R. Co. v. Probate Judge*, 53 Mich. 217.

The court below, acting in the present case upon the motion before it, undoubtedly had the power to pass

upon the question presented to it by the affidavits, and to vacate and set aside the award of the jury. No substantial injustice has been done, however, by the mandate of this Court compelling the court below to confirm the findings and award of the jury, for the reason that under the statute this Court, under its appellate power, may consider all of the questions there involved, and determine the rights of the parties thereunder. The statute provides:

"Within twenty days after the confirmation of the report of the commissioners or jury, as above provided for, either party may appeal, by notice in writing to the other, to the Supreme Court from the appraisal or report of the commissioners or jury. Such notice shall specify the objections to the proceedings had in the premises, and the Supreme Court shall pass on such objections only, and all other objections, if any, shall be deemed to have been waived. Such appeal shall be heard by the Supreme Court at any general or special term thereof, on notice thereof being given according to the rules and practice of the Court. On the hearing of such appeal, the Court may direct a new appraisal before the same or new commissioners or jury, in its discretion."

Before proceeding to a discussion of the objections to the confirmation of the report of the jury, it becomes necessary to state the situation and surroundings of the property sought to be taken, and the manner in which the petitioner proposes to erect its road along the street in front of respondents' property.

The proposed Fort Street Union Depot will front upon Third and Fort streets, and, with the proposed local freight-house, will cover about six acres of ground. The approach of the track to the depot extends along the river side of River street up to about Twelfth street, when it curves to the north-east, and there enters entirely into and passes upon River street, upon which the Backus property is situated. The railroad track pursues River

street towards the center of the city to about Seventh street, and then again curves to the north-east, to take its course to the new depot. Before reaching Twelfth street, the track begins an elevated grade, and where it passes respondents' property, on the northerly side of River street, is at an ascending grade of 22 feet to the mile. This elevated structure is to span the street from curb to curb, upon iron posts or pillars 35 feet apart on each side, above, in front of, and below the Backus property. In front of that property there are three broad-gauge tracks. Solid pans and shields are to be under every track. The tracks are to carry three trains with double locomotives. There is to be a switch in front of this property. Added onto the width of the railroad viaduct itself, in the street, and contiguous to it, there is to be an elevated viaduct for teams, solidly made, of the width of 24 feet, making a total width in front of the Backus property of 64 feet. Every track is laid upon ties, and the space between the ties is 6 inches. The cars, in passing, will project over the elevated structure from 1 to 2 feet. The weight of the standard locomotives will be from 50 to 60 tons. The top of the rails on the structure in River street in front of the property will be 25 feet above the roadway.

The Backus plant consists of a planing-mill property, and is in the first block towards the city from Twelfth street, on the northerly side of River street. It covers 1¾ acres of land, with a front on River street of 238.40 feet, and extends through the block to Fort street. The buildings front on River street on a level with that street, which is 15 feet lower than Fort street. These buildings are of brick, 45 to 48 feet high. The building is erected and arranged with reference to its relative situation to the Michigan Central Railroad, which passes under Fort street, and approaches River street obliquely,

passing the north-easterly side of the Backus property, contiguous to it, with its main tracks at the extreme end 80 feet away, and continually receding until it is 300 feet from the Backus property as it passes into River street at grade. It furnishes switch facilities for the planing-mill.

The value of the mill property is variously estimated at from $150,000 to $200,000. The plant consists of the planing-mill property, the lower mill, dust-room, shavings room, four dry-kilns, boiler house, engine room, and sheds on the side next to the Michigan Central Railroad tracks, 200 feet in length, with room to store 15 carloads of material. Mr. Backus himself puts the value of all this property at $150,000, and says that includes everything outside of the real estate. It is claimed, also, that the returns from this mill net from $25,000 to $70,-000 per year. Mr. Backus says, in reference to the dust-room and the appliances therein, that, in order to run the planing-mill, and make the room available, it is necessary to get rid of the shavings and sawdust as fast as it is made, and the most practical way to do that is to use a large exhaust fan that draws the stuff from the machine and throws it into a large reservoir; that, in order to have it work properly, it must be in a large place that will have free vent; that arrangements for taking care of the dust and shavings have been a great study for many years; that he finally conceived an idea of arranging his dust-room with burlaps, which is a perfect success; that he took out a patent for the arrangement of the dust-room with burlaps, and has probably built 100 of them for some of the largest institutions in the land, and without exception it is superior to anything else. It runs automatically, requiring no power. 2,700 yards of burlaps are used. The mill itself has 4 boilers and a 250 horse-power engine, together with 19

planing-machines, and other machinery of the best quality.

The claim was made upon the part of the respondents before the jury that the building of this track in River street by the petitioner for the purpose of carrying its railroad trains not only excluded the respondents from the free use of the street and the approaches to the mill and the light and air necessary to the proper conduct of their business, but also greatly endangered their property to fire from the engines of the petitioner in passing and repassing over this structure, especially on an up grade, and by the switch in front of the premises. Testimony was also given, showing that by reason of this increased hazard of fire from the engines it would be difficult to procure insurance, which, if it could be procured, would be at greatly increased rates, by reason of the danger of sparks from the engines falling upon the building and communicating to this dust-room, which is described to be of such inflammable character that it would be ignited from the smallest spark. It was also contended before the jury by the respondents that, by reason of the structure thus cutting off the free approach to the mill which the respondents have heretofore had from River street, and the obstructing of light and air and the endangering of the property by sparks from the engines, practically the whole mill property was ruined, and that the planing-mill business could not be profitably conducted there. It was also contended by the respondents that there was no necessity for the taking of River street, as the petitioner could lawfully have taken a strip of land belonging to the Michigan Central Railroad Company, and used by it as yards, upon the opposite side of River street from respondents' property.

Two trials of the case have been had in the court below. One was commenced February 25, 1891, and

terminated March 18 in a disagreement of the jury. A new jury was impaneled on June 10 following, and that jury rendered a verdict July 16 in favor of the petitioner on the question of the necessity of taking the property in River street for public uses, and assessed the damages of the respondents as follows: To Absalom Backus, Jr., as the owner of the fee, $17,850; to the corporation, A. Backus, Jr., & Sons, $78,293.

All of the objections to the proceedings before the jury, except the first, relate to the question of damages. The first objection is that the jury were not attended by a judge of the circuit court or by a circuit court commissioner, to decide questions of law, and to administer oaths to witnesses.

We think the first objection cannot be insisted upon in the present case, for the reason that the petitioner's proceedings before the jury were without objection, and without request that the jury be attended by the court or commissioner, and the petitioner must therefore be treated as having waived that point. We have listened to a very learned argument upon the part of counsel for petitioner upon the cases heretofore decided by this Court, in which counsel contends that the Court has always been wrong in holding that the presence of the judge or commissioner was not necessary in condemnation proceedings, inasmuch as the contest was not on litigious rights, and the jury were judges of the law and facts. We shall not enter upon a discussion of that question here, or review those cases, from the fact that the question was waived by petitioner in the court below.

The second objection urged by petitioner's counsel is that—

"The attorney for the respondents, taking advantage of the absence of the judge, did improperly, erroneously, and falsely claim and pretend to and before said jury

that the petitioner has the power, under the statutes of this State, to condemn a right of way for an elevated railroad along the margin of the property of the Michigan Central Railroad Company on the south side of River street, and for that reason the jury ought to find that there is no public necessity for taking a right of way in, upon, and along said River street for the elevated railroad proposed by the petitioner; and thereby said attorney did, by repeated arguments and assertions to and before said jury, convince a number of said jury that the property of the Michigan Central Railroad Company could be condemned by the petitioner under existing statutes, so that, when said jurymen came to yield on the question of necessity, they were so biased and prejudiced against the petitioner that they insisted upon the most extravagant, exorbitant, and grossly excessive damages."

The third objection sets out substantially the argument of counsel for respondents before the jury upon the question of necessity, and his efforts to make it appear that such necessity for using the street did not exist, for the reason that petitioner could condemn the property of the Michigan Central Railroad Company adjoining the street. The fourth objection is that the attorney for respondents, on his cross-examination of the witness James B. Mulliken, put the following questions for the purpose of leading said jury to believe that the petitioner could condemn the property of the Michigan Central Railroad Company, and that Mr. G. V. N. Lothrop, general counsel for the Detroit, Lansing & Northern Railroad Company, had so advised that company:

"*Q.* Who is the general counsel of the Detroit, Lansing & Northern?

"*A.* Mr. Charles B. Lothrop.

"*Q.* Before that, Mr. G. V. N. Lothrop?

"*A.* He was formerly.

"*Q.* That being the best route, was there ever any talk about the power of the said railroad company wanting terminal facilities to condemn the Michigan Central

ground? [The Detroit, Lansing & Northern is one of the routes interested in the Union Depot Company.]

"*A.* Mr. Lothrop said to me at one time that there was no difficulty in doing that.

"*Q.* Which Lothrop?

"*A.* G. V. N. Lothrop."

The fifth objection is that, although it clearly appeared on the further examination of said witness, James B. Mulliken, and by the testimony of said G. V. N. Lothrop, that the advice and opinion of said Lothrop was that the property of the Michigan Central Railroad Company could not be condemned without additional legislation, yet counsel for respondents claimed and pretended before the jury that under advice and opinion of Mr. Lothrop the petitioner could condemn a right of way along the margin of the lands of the Michigan Central Railroad Company.

The sixth objection is that this argument was used before the jury, although it appeared by the testimony that the property of the Michigan Central Railroad Company on the south side of River street was all in actual use by said company for depot and other purposes pertaining to the operation of the railroad, and that the same was needed by the said company for the purposes of the depot and other terminal facilities.

The seventh, eighth, ninth, and tenth objections all relate to the statements of counsel, and claim made by them in behalf of respondents, that the Michigan Central Railroad property could be taken by the petitioner; that the statutes authorized the taking; and the appeal by counsel to the jury not to take respondents' property, for the reason that it was the duty of the petitioner to go over the grounds of the Michigan Central Railroad Company.

All these objections may be considered together. The

92 MICH.—4.

Union Depot act (No. 244, Laws of 1881; chap. 93, How. Stat.) does not contain any provisions authorizing the taking by the Union Depot Company of the lands of the railroad company except for crossings. Section 6 of the act provides:

"In case any such company is unable to agree for the purchase of any real estate, property, or franchises required for the purpose of its incorporation, it shall have the right to acquire the title to the same in the manner and by the special proceeding prescribed in this act; but there shall be no power, except for crossing, to take the track or rights of way of any other railroad company without the consent of said railroad company."

It is contended, however, upon the part of counsel for respondents, that it may be taken by virtue of the general railroad law. The general railroad law provides that there shall be no power, except for crossing, to take the track or rights of way of any other railroad company without the consent of said railroad company, except as is thereinafter provided, being substantially the same provision as in the Union Depot act. How. Stat. § 3331. As originally enacted, section 36 of article 2 of the general railroad law related to the manner of making crossings, with a proviso:

"No such crossing or connection shall be made within the depot limits of any such company without the consent of such company, or acquiring the right thereto, as provided in this act for the taking of land and other property." How. Stat. § 3350.

This section was amended, however, in 1883 and 1887. The amended section contains no provision authorizing the condemnation of the depot grounds or rights of way of any other company. 3 How. Stat. p. 3285, § 3350.

By the amendment to the general railroad law enacted in 1881 (How. Stat. § 3357) it is provided:

" When any part of the land of any railroad company in this State in or adjacent to its depot grounds is not in actual use for depot or other purpose pertaining to the operation of a railroad, and such land is not needed by said railroad company for the purpose of a depot or other terminal facilities, it shall be lawful for any other railroad company, organized as aforesaid, needing such land for the purpose of a depot or terminal facilities, to acquire the same in the same manner as may now be done for such purpose from individuals. The question of actual use and of necessity for the aforesaid purposes by said railroad company owning and not using said land shall be determined, in addition to other questions, as provided by law in cases of condemnation of lands for the purpose aforesaid; and the same proceedings in all respects, as near as may be, shall be had for the aforesaid purpose as now provided by law where land is acquired for such purpose from individuals."

It is under this statute that counsel for respondents contended before the jury, and contends here, that the Union Depot Company had the power, and that it was its duty, to have taken the lands of the Michigan Central Railroad Company, rather than occupy the public street to the injury of the respondents. Except in so far as the power is conferred by this section, there is no authority under either act to condemn the property of another railroad company except for a crossing.

The testimony shows that the Michigan Central Railroad Company is in the actual occupancy of all the property between River street and the Detroit river from Third to Twelfth streets, and that it is necessary to use all that property to transact its business properly. The proposition does not relate simply to the right of petitioner to make a crossing of the Michigan Central tracks or right of way, but to the taking of a strip longitudinally from the side of lands used by that company as yards and depot grounds. The Union Depot act does not in express terms or by implication authorize this

taking, and whether the petitioner can avail itself of the provisions of the general railroad law above quoted is questionable. But, admitting that the provisions of the general railroad law have application to the petitioning company, so that it could invoke the aid of that statute, certain conditions must exist before it could condemn for its own uses:

1. That the lands are not in actual use for depot or other purpose pertaining to the operation of the railroad of the Michigan Central Company, and not needed for depot or other terminal facilities.

2. That the railroad company seeking to condemn needs the land for depot or terminal facilities.

3. That a public necessity exists for the taking for the purpose for which the land is sought to be acquired.

The last two questions would be involved in the ordinary condemnation proceedings under the statute. The first question could be determined only in a direct proceeding for that purpose, and it would be not only impracticable, but impossible, in a condemnation proceeding, to try that question. There is no power given by the Union Depot act to try such a question in a proceeding for condemnation, and the general railroad law does not, in express terms, confer the power upon commissioners or a jury to enter upon such an inquiry. No forum is pointed out by the railroad law where this question may be litigated; and there arises no implication that it was the intent of the Legislature to permit the jury of inquest to enter upon such an inquiry. The form of the oath to be administered to the jury is to determine the public necessity and just compensation, and not to enter upon an inquiry as to whether property which has been set to one public use is not necessary to that use, and may be devoted to another.

In *Allegheny, etc., R. R. Co. v. Pittsburgh, etc., R. R. Co.*, 122 Penn. St. 511 (6 Atl. Rep. 564), it was claimed

that the yard of the plaintiff was larger than was neces-sary for its present use, and that it could be so rear-ranged as to accommodate defendant's tracks without serious detriment to the plaintiff either in the present or future. The court said:

"We are of opinion that a railroad company has a right to consider the needs of the future, and to con-struct its road and make its plans with reference to those future needs. * * * 'Every reasonable intend-ment must be taken in favor of the primary rights. No actual encroachment upon these rights can be sanctioned or allowed, and in measuring their extent there must be a liberal consideration for the future, as well as the exist-ing, necessities of the complainant, the use of the exist-ing tracks, the construction of additional ones, the con-venient storage of its freight at all seasons, and the unembarrassed transaction of all its business.'"

See, also, *Housatonic R. R. Co. v. Lee & H. R. R. Co.*, 118 Mass. 391; *Boston & M. R. R. Co. v. Lowell & L. R. Co.*, 124 Id. 368; *Railroad Co. v. Williamson*, 91 N. Y. 522; *Illinois Cent. R. R. Co. v. Chicago, etc., R. R. Co.*, 122 Ill. 484 (13 N. E. Rep. 140); *Union Depot Co. v. St. Paul*, 30 Minn. 359 (15 N. W. Rep. 684); *Railway Co. v. Faribault*, 23 Id. 167; *Atlanta v. Railway Co.*, 53 Ga. 120.

Under the form of procedure established in this State by prior decisions, when the jury are not attended by a court to determine the admissibility of evidence and cor-rect principles upon which litigious rights are to be determined, it would be a novel proceeding to permit the jury to be judges of the law and facts in a contest where the question involved was whether a railroad company was in actual use of property for depot purposes, or needed the property for such purposes, for terminal facilities. The section of the Constitution which authorizes a jury in condemnation proceedings does not contemplate that they may enter upon

such a question as is here presented, and the general
railroad law does not bear that construction. The pres-
ent case, however, is freed from that question by tes-
timony, which is uncontradicted, that the Michigan Cen-
tral Railroad Company is in actual occupancy of all that
property, which is necessary to transact its business
properly.

It is contended, however, by counsel for respondents
that the presentation of the question by argument of
counsel could not have influenced the jury, as they
found the question of necessity in favor of the peti_
tioner. I think that question is well answered by the
learned circuit judge. He says:

"It is not sufficient to say that the jury found with
petitioner upon the question of necessity. This does
not in any way meet the question. The petitioner was
entitled to just consideration upon the question of com-
pensation or damages to be awarded.   *   *   *   The
natural and inevitable effect of the arguments made is
manifest. It would be difficult to conceive of an argu-
ment more effective, the certain and inevitable tendency
and effect of which would be to influence the jury, and
cause them to award the most extravagant and exorbitant
damages."

The court again remarks:

"As we have seen, the jury, although judges of the
law and facts, have no right to disregard well-recognized
legal principles, and counsel who appear before them
are governed by the same rules, and subject to the same
responsibility, which govern their conduct in court."

It is the duty of the court to interfere where matters
foreign to the issue are rehearsed before the jury, preju-
dicial to the interests of a party. *Cronkhite v. Dickerson,*
51 Mich. 178; *Bond v. Railroad Co.,* 62 Id. 646; *Sullivan
v. Deiter,* 86 Id. 404. There are many pages of the
arguments of counsel in the record, showing the persis-
tency with which counsel urged upon the jury the right

of the petitioner to take the property of the Michigan Central Railroad Company, and it is too plain for argument that it must have affected the jury in determining the amount of damages to be - awarded. The jury ought not to have permitted the testimony to be given relating to that subject, or listened to arguments thereon.

Objections 11, 12, 13, and 14 are directed to the refusal of the jury to permit the petitioner to show that another kind of dust-arrester could be placed in the building at a small outlay, and one.which would make the building comparatively safe from ignition from falling sparks from passing engines. It is not necessary to enter upon a full discussion of that question. The jury were in error in rejecting this testimony, in view of the testimony of respondents upon the subject.

The objections which we have discussed we think well taken, and for that reason the award of damages should be set aside. The court below well remarked:

"The damages awarded are most remarkable. The right of way ·sought to be acquired is the right of way for an. elevated railroad along River street in front of the property of respondents. They have a frontage on the street. of some 238 feet, and on Fort street of about 75 feet. At $150 a foot,—which is a large estimate,—the land itself is worth $46,950. The testimony of respondent Absalom Backus, Jr., is to the effect that the buildings and improvements had cost $150,000, and are worth that now. But, deducting 25 per cent. for depreciation,— which is usual on buildings and improvements of some years' standing,—we have a valuation of $112,500, or a total valuation for the entire property of $159,450; and yet for simply going in front of this property a jury makes a total award of $96,143."

It is objected by respondents' counsel that the award cannot be disturbed for the reason that since the award and confirmation petitioner has, by order of the court, paid the amount awarded to the respondents. We think

this objection cannot be sustained. Section 11 of the Union Depot act provides for the recording of a certified copy of the order of confirmation in the office of the register of deeds, and the taking possession of the land; and that the sum to be paid as damages, etc., shall be paid by the company, or deposited, as provided in section 10, within 60 days after the confirmation of the report, and, upon failure so to do, said company shall be deemed to have abandoned the proceedings. By section 10 the court may direct to whom the money is to be paid, or where deposited. Section 11 provides for an appeal to the Supreme Court within 20 days after the confirmation, and on such appeal the Court may direct a new appraisal before the same or another jury. If the amount of compensation is increased by the second report, the difference is to be a lien on the land appraised, and be paid by the company. If the amount is diminished, the difference shall be refunded to the company. The appeal shall not affect the rights of a party not appealing, and only the right of the appellant in the matters appealed from. It is apparent that it was the intent of the Legislature that the rights of the parties appealing should not be affected upon the appeal by the payment of the money as directed by the court, either to the party, or on deposit for the use of such party. The petitioning company has not appealed from the award as to the public necessity for taking the property, but from the amount of damages awarded; and the fact of the payment of the damages to the respondents under order of the court cannot affect its right to have the question retried by another jury.

The award of damages must be set aside, with costs, and that question submitted to a new jury, to be impaneled before the circuit court for the county of Wayne in accordance with the statute.

McGrath and Grant, JJ, concurred with Long, J.

Montgomery, J. *(concurring)*. The opinion of Mr. Justice Long sufficiently states the facts in the case; and the only question to which I shall advert is that of whether the circuit judge has power, under the statute relating to these proceedings, to set aside the award of the jury, and direct a new trial before another jury, to be impaneled.

It would be unseemly and unwarranted for the Court to overrule its former opinion in any case where such result is brought about by a difference in view between Justices, one of whom succeeds the other (*McCutcheon v. Homer*, 43 Mich. 483); but, inasmuch as a majority of the Court as constituted when the opinion in *Backus v. Gartner* was rendered concur in overruling that decision, I feel free to state that, in my opinion, the statute is sufficiently broad to confer the power assumed by the circuit judge in this case.

The statute imposing the duty and conferring power upon the circuit judge in such proceedings provides that he "shall confirm the same on the next or any subsequent day when in session, unless for good cause shown by either party;" and, further, that "said court, as to the confirmation of such report, shall have the powers usual in other cases." The words "powers usual in other cases" were so construed in *Backus v. Gartner* as to exclude the power to award a new *venire*, and it was held by the learned Chief Justice that the intent was to convey the same power as was conferred on the judge in other cases in which the confirmation of reports, made to such court by some body or persons authorized by law to make them, was committed to his jurisdiction, and the learned Justice cites as an analogous proceeding the power conferred to confirm the report of referees, and concludes that the only power under that statute would

be to confirm the report of the referees, or send the same back to the same referees. Section 7379, How. Stat., seems to have been overlooked, which provides that—

"The circuit judge may, by an order under his hand, filed with the clerk, discharge any referee on cause shown by affidavit, and may in like manner fill any vacancy that may occur in their number, or may direct the reference to proceed and be concluded without filling any such vacancy."

It cannot be doubted that under this section the circuit judge might, upon a showing that the referees were prejudiced or biased, discharge one or all of such referees, and refer the same to new referees to be appointed by him.

Under article 6, § 8, of the Constitution, the circuit courts are vested with full power in civil and criminal proceedings. They are the courts of the highest original jurisdiction in the State, and are beyond the reach of the legislative power. *Heath v. Circuit Judge,* 37 Mich. 372; *Allen v. Circuit Judge,* Id. 474. The power to control the verdicts of juries and set aside the same for bias is among the most essential powers vested in a *nisi prius* court, and to justify a construction of a statute which excludes this power the language should be clear and unmistakable. In my judgment, such an intent is not evidenced by the act in question. The provision that the circuit judge shall have the powers usual in other cases, fairly construed, means the powers usual in other cases within the jurisdiction of such court. This includes the power to see that justice shall not miscarry by reason of the prejudice or misconduct of the jury.

A law of Tennessee provides that not more than two new trials shall be granted to the same party in any action at law, or on the trial by jury of an issue of fact

in equity. In *Trott v. West*, 10 Yerg. 499, the supreme court of Tennessee held that this act did not intend to prevent the court granting new trials for error in the charge of the court to the jury, for error in the admission or rejection of testimony, for misconduct of the jury, and the like. See, also, *Turner v. Ross*, 1 Humph. 16; *Railroad Co. v. Hackney*, 1 Head, 170.

I concur in the conclusion reached by Mr. Justice LONG.

MORSE, C. J. (*dissenting*). I am well satisfied with the decision of this Court when this case was here before, and with the opinion of Chief Justice CHAMPLIN, reported in 89 Mich. 209. Any other holding is not only inconsistent with the repeated adjudications of this Court, but contrary to the spirit and purpose of the constitutional provision relating to the taking of private property for the use or benefit of the public.

Under section 2, art. 18, of the Constitution, it is evidently contemplated that the necessity for the taking and the just compensation to be awarded are to be found by a jury of 12 freeholders *residing in the vicinity of such property*, or by not less than 3 commissioners, appointed by a court of record as shall be prescribed by law. It was never intended that the fixing of damages should rest in the discretion of any court, but the right of the person whose property is sought to be sequestered to the determination of 12 of his neighbors upon the question is guarantied by the Constitution, so that neither courts nor legislatures can deprive him of it. Yet in this case the Judges of this Court are asked to set aside the judgment of the 12 men provided by the Constitution to ascertain respondents' damages, and, in effect, to fix our own estimate of damages to property which some of us have never seen, and of the location and value of which

we are ignorant, except as we weigh and determine the conflicting evidence in the record before us. For, if we have the power, and, having it, exercise it, to set aside a verdict because we think it is too great, do we not, in effect, fix the limit beyond which a jury cannot go in the ascertainment of damages? Having no personal knowledge of the property of respondents sought to be condemned by these proceedings, and having no constitutional or statutory power to use a personal view of the premises in aid of my judgment, I shall not take the liberty to substitute my judgment for that of 12 men residing in the vicinity of this property, and presumably having better knowledge than I have of the property, and the damages that will result to it by the proposed taking. I know of no other reason for a view of the premises except that such view may be used in the formation of the judgment of the jury, both as to the necessity of the taking, and the amount of the compensation to be awarded.

The jury in condemnation proceedings, "as in all cases where no certain measure exists, must trust somewhat to their own judgment. That is one of the purposes for which juries of inquest are provided. They are expected to view the premises, and use their own senses, both to obtain such information as an eye-witness can gain, and to interpret and comprehend the testimony of others." *Grand Rapids, etc., R. R. Co. v. Chesebro,* 74 Mich., at page 475 (CAMPBELL, J.); *Toledo, etc., Ry. Co. v. Dunlap,* 47 Id. 466.

It has been uniformly held by this Court, in the face of a statute which provided that the judge should attend the jury to decide questions of law and to administer oaths to witnesses, that, after the jury were selected and sworn, the whole matter was in their hands, and the decisions of such judge were entirely advisory, and that

the jury were the sole judges of the law and the facts; and, further, that they were not conclusively bound by the opinion of witnesses either as to value or damages. *Grand Rapids, etc., R. R. Co. v. Chesebro,* 74 Mich. 471, 472, 476, 478; *Mich. Air Line Ry. Co. v. Barnes,* 44 Id. 226, 227; *Toledo, etc., Ry. Co. v. Dunlap,* 47 Id. 456; *Port Huron, etc., Ry. Co. v. Voorheis,* 50 Id. 510; *Detroit West., etc., R. R. Co. v. Crane,* Id. 182, 187; *Flint & P. M. R. R. Co. v. Detroit & B. C. R. R. Co.,* 64 Id. 363; *Fort Street Union Depot Co. v. Jones,* 83 Id. 415, 418.

The contention of the petitioner that the circuit judge had a right, in this case, to set aside the verdict of the jury, and grant a new trial, because of the admission of irrelevant testimony, must rest upon the presumption that this is a judicial proceeding to be controlled by the courts as in a suit at common law. This is not the theory of the Constitution, or in accordance with the previous rulings of this Court. It is not a judicial proceeding.

"Commissioners form no part of the machinery of a court, and a jury of inquest is not a court. It has always been settled that the appropriation of private property did not come under the 'judicial power,' as it is located under the Constitution in courts, and, except for the Constitution, the nature of the tribunal of condemnation would have been discretionary with the Legislature." CAMPBELL, J., in *Grand Rapids, etc., R. R. Co. v. Chesebro,* 74 Mich., at page 471.

The proceedings in this class of cases are special, and bear little resemblance to ordinary legal trials. *Toledo, etc., Ry. Co. v. Dunlap,* 47 Mich. 462; *Port Huron, etc., Ry. Co. v. Voorheis,* 50 Id. 510.

If the circuit judge can be permitted to set aside a verdict because improper and irrelevant testimony has been admitted, then the long line of decisions above

quoted must be overruled, or our holdings will be so inconsistent as to be absurd, and the proceedings become a farce. *First,* we hold that the attending judge has nothing to do with the admission or rejection of evidence, and that, if he rules upon any question, the jury are at liberty to disregard such ruling, they being the sole judges of the law and the facts; and, *second,* that if the jury, in admitting or rejecting evidence, have erred, in the estimation of the circuit judge, he may, for that reason, refuse not only to confirm their verdict, but set it aside, and order a new jury. If this last proposition is to be maintained, what sense is there in the holding that the judge cannot control the jury in their deliberations before verdict upon this matter of the rejection of testimony? Would it not be better and cheaper for all parties, and more in accordance with the requirements of justice and fairness, that the attending judge should pass upon the matter of what is proper testimony before it goes to the jury? The answer is obvious. The second proposition is entirely inconsistent with the first, and, if established by this Court, as contended for in this case, it would be well to state that the previous adjudications of this Court are expressly overruled, and from this date inaugurate a new departure in the law of condemnation of private property for public use.

Much stress is laid upon the imperfections of a jury, but the answer to this is that they are the tribunal chosen by the Constitution, as a highway commissioner was chosen to condemn lands for public highways. So far no court has undertaken to interfere with a commissioner's rulings as to the necessity or the damage in a highway opening where he had acquired jurisdiction. He is an autocrat beyond the law as to these matters, and made so by the Constitution. And a jury, in my opinion,

in a case of this kind, is the tribunal to fix the damages, and are judges of the law and the facts, created so by the Constitution; and, when clothed with jurisdiction as the law provides, their award can only be impeached for fraud or corruption, or upon a showing that by mistake or willfulness they have omitted to take into consideration substantial elements of damage, and therefore substantial injustice has been done. And this is a matter for the Supreme Court, and not for the attending judge. As pointed out when the case was here before, no express power is given such officer in the statute to set aside the verdict of a jury and to impanel a new one, but such power is expressly granted to this Court. The only power given is to confirm, or at best to refuse to confirm, the report of the jury or commissioners. Here the duty of the attending judge ends under the statute, and, in view of the Constitution, it is not to be presumed that he has any implied power, unless, indeed, it be true that this is a judicial proceeding, and the judge has common-law powers, which has been denied time and time again by this Court.

The absurdity of permitting the circuit judge in this case to set aside the verdict because of the errors in admitting testimony, and because of the talk of counsel, the same as if this were an ordinary law-suit, is well illustrated by one claim of the petitioner and the opinion of the circuit judge thereon. In the course of the proceedings it was contended by the attorney for the respondents, in their behalf, that there was no necessity for the taking of the Backus property, or the street in front of it, because there was a strip of land belonging to the Michigan Central Railroad Company, which might be taken instead. It was found by the circuit judge that the contention of respondents' counsel was wrong in law, and that he had put improper questions to witnesses in

this respect, especially in drawing out from one witness that Mr. George V. N. Lothrop had at one time said that there was no difficulty in condemning this Michigan Central property for railroad purposes; and this was one of his principal reasons for setting the verdict of the jury aside. Yet the jury found against the respondents upon the question of necessity,—the very question to meet which this claim that this Michigan Central strip could be taken and used was raised and argued by respondents' counsel. But the circuit judge, in the face of this finding, is convinced that, although the raising of this question and the argument upon it had no effect for the purpose for which it was used, yet it tended to largely increase the damages in favor of respondents, to the great prejudice of the petitioner. The award is not to be set aside, even by this Court, unless it clearly appears that injustice has been done, and yet we are asked to go into the realm of speculation to guess that an argument made by an attorney for one purpose, and in which purpose it failed, was productive of great harm in another and altogether different direction.

We held in *Kalembach v. Railroad Co.,* 87 Mich. 509, that it would not be presumed that the jury in that case were prejudiced upon the measure of damages because of improper instructions by the court upon the law of negligence. Mr. Justice GRANT said the result of the opposite rule " would be that a court must correctly instruct the jury upon all branches of every case, in order to avoid prejudicing the jury in their assessment of damages." But here the doctrine is announced that in condemnation cases, where the jurors have heretofore been considered the judges of the law and the facts, and not bound by the instructions of the attending judge, the attorneys for the parties must make no mistakes in their claims as to the law upon any branch of the case, or

the verdict will be set aside. I have yet to learn of
any case in the history of jurisprudence where a verdict
has been set aside because an attorney for either party
was mistaken in his ideas as to the law of the case, and
contended in good faith for a proposition which was
erroneous in the estimation of the courts. If this prin-
ciple is established, there will be but little safety or cer-
tainty in trials of any kind, since much litigation is
born of lawyers' errors; and, if the appellate courts must
pass upon the errors of counsel, as well as of the court,
reversals will be the rule, and affirmation an exception.

This Court has never held that a probate or circuit
judge could set aside a verdict of a jury or a report of
commissioners, and impanel a new jury or appoint new
commissioners, because the award of damages was excessive,
or because improper evidence was received. In *Marquette,
etc., R. R. Co. v. Probate Judge,* 53 Mich. 222, it was
said that the commissioners' report might be set aside if
the amount awarded was unreasonable, *and indicated that
it was the result of prejudice or partiality,* or that they
acted upon a wrong basis of estimating the damages.
It has also been said in other cases that the commis-
sioners' report could for substantial reasons be set aside,
or the award of the jury be vacated, for irregularity or
on the merits. *Port Huron, etc., Ry. Co. v. Callanan,*
61 Mich. 14; *Grand Rapids, etc., R. R. Co. v. Chesebro,*
74 Id. 472. If the judge can, under these decisions,
vacate the award of the jury, there is no adjudicated
case in Michigan where an order was ever made by an
attending judge granting a new trial before a new jury,
and there is no showing that such an order was ever
made except in this case. No provision is made in the
statute for any such action, and, as the right of appeal
is only given upon the confirmation of the report, it

seems plain to me that the right to vacate an award of damages is not vested in the attending judge because of excessive damages or the reception of improper evidence. If he vacates the award, it must be for jurisdictional reasons, or because of fraud, undue prejudice, or corruption in the jury or commissioners. The amount of the damages, and the law of the case as to the reception or rejection of testimony, are beyond his province. With either he has nothing to do, or the utterances of this Court are to be disregarded.

In the very latest case in this Court before this one, Mr. Justice GRANT, speaking for the whole Court, said, after quoting from the language of Mr. Justice CAMPBELL in *Railway Co. v. Dunlap* :

"It was there also held that the functions of the judge in such cases were advisory merely, and that such controversies as this cannot be disposed of on merely technical notions. These proceedings may be instituted in probate courts, the judges of which are frequently not lawyers, and are unfamiliar with the rules of evidence. If they were to be set aside on account of errors in the admission or rejection of testimony, the difficulty of obtaining a finding by the jury which could stand the test would be apparent." *Fort Street Union Depot Co. v. Jones,* 83 Mich. 418.

It will be seen that the petitioner in that case was contending for exactly the opposite rule that it seeks to have enforced in this case.

If it is to be held that a judge cannot control a jury by ruling as to what testimony they may receive, as we have uniformly decided heretofore, and also that, after the jury come in and report, their award may be vacated, and a new trial granted by this same judge, because they have received improper testimony or rejected competent evidence, then the language of Mr. Justice GRANT seems appropriate, for a jury are presumably as ignorant of

rules of law as are probate judges; and there will seldom be found a verdict that can stand the criticism of a circuit judge in this respect. As before said, the whole thing becomes a farce and absolute nonsense, unless this Court goes still further than the majority opinion in this case, and overrules all our former adjudications that the jury are the judges of the law and the facts, and relegates the proceedings to the judicial practices after the form of the common-law trials. I am not prepared to go thus far, nor yet to take the initial step which logically must lead the Court at last to this end.

In conclusion, I do not think the petitioner has any standing in this Court. I know of no constitutional method by which an individual or a corporation can be authorized to take the property of another, and hold, enjoy, and use it, while litigating in the courts the amount it shall pay for the property. In any other case than a condemnation proceeding the voluntary payment of a judgment, after appeal, would discontinue the appeal. It is contended that under the statute it was the intent of the Legislature that the rights of the parties appealing should not be affected by the payment of the money, as directed by the court, either to the party, or on deposit for the use of such party. And it is further contended that, as the petitioner has not appealed from the finding of public necessity for taking the property, that question is settled, and the company's right to contest on appeal the award of damages remains, although it has taken possession of the property and paid the damages. Under our Constitution private property cannot be taken without just compensation, and it is not intended that possession of the property shall be given to the public, or to a *quasi* public corporation, until the matter of compensation is settled or finally determined, and paid or secured beyond peradventure.

Section 9, art. 15; *Sheldon v. Kalamazoo*, 24 Mich. 386; *Marquette, etc., R. R. Co. v. Probate Judge*, 53 Id. 226. The Legislature has no power to avoid this plain provision of the Constitution. The petitioner could only get possession of this street in front of respondents' property by the payment of the award. On its own motion it paid the money to respondents, and took possession of the property. By so doing it abandoned its appeal.