*In re* ACQUISITION OF LAND FOR RECREATIONAL
PURPOSES.
APPEAL OF CARD.

1. EMINENT DOMAIN—NECESSITY—QUESTION OF FACT FOR JURY.

In condemnation proceedings wherein a jury is used, the question
of necessity for taking the lands sought to be condemned is
solely a question of fact to be submitted to and determined
by the jury (Const. 1908, art. 13, § 2).

2. SAME—CONDEMNATION FOR RECREATIONAL PURPOSES—NECESSITY
—EVIDENCE—OTHER CITY-OWNED LANDS.

In condemnation proceedings by city to condemn some 30 parcels
of land in a two-block area occupied for housing purposes,
which, together with tax-delinquent land in same area acquired
under the scavenger sale act, was sought to be used for recrea-
tional purposes, testimony that city already owned a 26-acre
tract a block from the proposed site that had been set aside
for a tree nursery, was competent and should have been ad-
mitted on question of necessity (Act No. 155, Pub. Acts 1937,
as amended).

REID, J., dissenting.

Appeal from Recorder's Court for the City of
Detroit; Skillman (W. McKay), J. Submitted
June 3, 1947. (Docket No. 2, Calendar No. 43,664.)
Decided October 14, 1947. Rehearing denied De-
cember 3, 1947.

Petition by City of Detroit for condemnation of
land for recreational purposes. Verdict finding
necessity and fixing amount of damages. Judgment
on verdict. Defendant Enoch Card and others ap-
peal. Reversed and new trial granted.

*William E. Dowling,* Corporation Counsel, and *Vance G. Ingalls,* Assistant Corporation Counsel, for plaintiff.

*Ramon A. Martinez,* for defendants.

REID, J. (*dissenting*).  Defendants appeal from a judgment of the recorder's court for the city of Detroit confirming an award for the condemnation of defendants' lands in question for recreational purposes.  The city of Detroit (a home-rule city) on November 9, 1945, through its corporation counsel, William E. Dowling, filed its petition in the recorder's court of said city for the condemnation of 30 parcels of land under the provisions of title 8, chap. 1, of the charter of the city of Detroit relative to condemnation proceedings.  The petition requested the court to impanel a condemnation jury to determine among other things, "whether it is necessary to take the said private property described in the fifth paragraph of this petition, for the use and benefit of the public; whether the taking of such private property is a necessity for the purpose of making such public improvement."  The trial of the case began on May 15, 1946, and proceeded during about four weeks' time.  The jury visited the property on June 10, 1946.  On June 12, 1946, the jury found the necessity as claimed by the city, and made an award of $92,950 to the owners, which verdict was confirmed on June 19, 1946, by order of the court.  No motion for a new trial was filed.

The plaintiff city contended that the common council of the city of Detroit had determined the necessity of providing much more adequate and enlarged recreational facilities for the neighborhood

in question, that in order to create such adequate recreational facilities it became necessary to enlarge the existing playground of the Higgenbotham public school two blocks to the east, taking in a number of lots already owned by the city of Detroit and the 30 parcels of private land involved in this case; that under the provisions of the scavenger sale act * the lands (evidently embraced in the same general area) which had already been acquired by the city through scavenger sale must be converted to a public use, otherwise the said lands would revert to the State, and be a loss to the city, and it therefore became a public necessity to condemn the private property involved in this two-block area in order to consolidate all of the land into one recreational unit.

Defendants contended that the condemnation of private property was not necessary because the city of Detroit owned 26 acres of land which it could convert into a park within the same neighborhood and at a distance one block southwest of the proposed site; that the condemnation of the 30 parcels of property involved the eviction and ouster of 22 families and that in itself was a double hardship in view of the fact that the neighborhood is a Negro neighborhood and the 22 Negro families would have a much more acute problem of finding housing than if they were white families; and that as between housing and recreation, the needs of the 22 families represented a more acute problem for the city of Detroit than the problem of furnishing additional recreational facilities.

The testimony offered shows statements by city officials to the effect that the city does not propose

---

* See Act No. 155, Pub. Acts 1937, as amended (Comp. Laws Supp. 1940, 1945, § 3723–1 *et seq.*, Stat. Ann. 1946 Cum. Supp. § 7.951 *et seq.*).—Reporter.

to eject the tenants during the housing shortage. Plaintiff claims that two-thirds of the owners have accepted their awards. We would suppose that the lands taken would afford colored children additional playground facilities.

Defendants state that the crux of the case hinges on a proposition of law, whether the jury in determining the question of necessity should consider the availability of the 26 acres of city lands, which the city had set aside for a tree nursery in connection with the work of, and under the supervision of, the department of streets and recreation, and as to the availability of which the trial court refused to admit testimony.

In support of their contention that the jury should have been permitted to consider the availability of the 26-acre tract, defendants cite *City of Grand Rapids* v. *Coit,* 149 Mich. 668, and particularly, the third section of the syllabus,

"Where the only purpose of a proposed street improvement, involving the taking of private property, is to make an easier grade, the landowner has a right to the verdict of the jury on the question whether the making of an easier grade, in the manner proposed, is a public necessity, and rulings on instructions which result in a charge which does not give effect to this rule are erroneous."

However, it appears that the city in the *Grand Rapids Case* had already in use other streets of 10 per cent. grade parallel with the street (Hall street) which was sought to be laid out and widened. The landowner contended that those other streets could serve the same purpose for which Hall street was sought to be condemned, *viz.,* street facilities. However, the question of cost of and desirability of change of grade was also involved. In that case we said (p. 672):

"The purpose and only purpose of the proposed plan is an easier grade. It is a necessary conclusion that the real question to be decided by the jury was whether the making of an easier grade, in the manner proposed, was a public necessity."

In the *Grand Rapids Case* the jury considered the necessity for condemning the land sought to be condemned for the purpose of street traffic and adequacy of other lands held by the city already serving the same purpose. In the case at bar the jury was not permitted to consider the availability of lands the city already owned which had been lawfully appropriated to a totally different use from that sought to be subserved in the condemnation case.

Plaintiffs cite *Fort Street Union Depot Co.* v. *Backus*, 92 Mich. 33, in which we say (p. 52):

"The form of the oath to be administered to the jury is to determine the public necessity and just compensation, and not to enter upon an inquiry as to whether property which has been set to one public use is not necessary to that use, and may be devoted to another."

Plaintiffs further cite 29 C. J. S. p. 887:

"The landowner can not raise the objection that there is no necessity for condemning his property because some other location might be made, or some other property obtained which would be more suitable."

In the case at bar, to permit the jury to consider the availability of the 26 acres would require that as a part of the consideration of the availability the jury determine the necessity for the continued allocation of the 26-acre tract to the purpose of a tree nursery. The action of the city in setting the tract apart for the purpose of a tree nursery can

not be made a subject of review by the jury in the case at bar, for which purpose the jury was not impaneled. The jury was not sworn for any purpose of determining the necessity for a tree nursery. Such review would be outside the scope of the proceeding in which the jury was acting. The purpose for which lands were sought in the condemnation proceedings was a totally different purpose from that for which the lands in the 26-acre tract had already been appropriated.

Defendants claim, as one of their grounds for appeal, that the trial judge refused to charge the jury that condemnation statutes must be construed in favor of the landowner and strictly against condemnation. The latter clause, ''strictly against condemnation,'' was not incorporated in defendants' request to charge. The requested instruction was based only on the last sentence (which we now italicize) in the following excerpt from our opinion in *Re State Highway Commissioner,* 252 Mich. 116, 124:

''Like others, condemnation statutes must be construed to effectuate their purpose, which at times may control their language.     *     *     *     The general terms of the act are important in finding the effect of a particular provision. *The construction must be in favor of the landowner.*''

Defendants were not entitled to have this last sentence, above quoted, given in the judge's charge without qualification or explanation. Moreover, the real controversy in the case at bar pertains to the introduction of testimony and ruling on offered testimony, a matter for the court and not for the jury. The instruction requested would be inapt, as it pertains to a matter not for the jury's consideration. We find no ground for a new trial on account of refusal to give the request to charge.

Defendants request that we enter a declaratory statement as to the merits of petitioner's claim of necessity. This would invade the province of the jury or commissioners, where commissioners are appointed. *Ontonagon Railroad Co.* v. *Norton,* 236 Mich. 187, 190. See, also, Const. 1908, art. 13, § 2; *People, for use and benefit of Regents of University of Michigan,* v. *Pommerening,* 250 Mich. 391, 394.

We quote from the syllabus in *Breisacher* v. *Judge of Recorder's Court of Detroit,* 223 Mich. 254, as follows:

"Under the charter of the city of Detroit, in condemnation proceedings a motion for a new trial must be made within two days after the rendition of the verdict unless further time is allowed by the court, and if a party by neglect to move within the two-day period loses his right to move for a new trial the court may not thereafter restore it."

Our attention has not been directed to any change in the Detroit city charter as to the two-day limitation, nor do we see any reason why defendants should not be considered barred from questioning the verdict. They did not move for a new trial within the two days after rendition of verdict nor move for an extension of time.

Granting a new trial under the circumstances would call for the exercise of discretion. There is no ground or reason to exercise such discretion in this case.

The verdict and judgment entered confirming the verdict should be affirmed. Costs to plaintiff.

BOYLES, J. The crucial question here is whether the circuit judge erred in refusing to allow the landowners (appellants) to introduce testimony before the jury in condemnation proceedings, to show that

the city was already the owner of other lands in the same locality equally suitable for the public purpose intended (in this case, for recreational purposes, to establish a public playground).

In this case, the question of necessity for taking the lands sought to be condemned is solely a question of fact to be submitted to and determined by the jury. The Constitution (article 13, § 2 [1908]) so provides, and this Court has frequently so held. See *In re Widening of Michigan Avenue, Roosevelt to Livernois (Parcel 68),* 280 Mich. 539, and cases cited therein.

The question whether there was any necessity for the city to take the lands here in question, for recreational purposes, if the city already owned other lands in the same locality equally suitable for such purposes, was a proper question for the determination of the jury. The testimony offered by appellants, as bearing on the question of necessity, to the effect that other lands in the vicinity, already owned by the city, would accommodate the needs of the public equally well, was competent and should have been admitted. *City of Grand Rapids* v. *Coit,* 149 Mich. 668; *Village of Hamtramck* v. *Simons,* 201 Mich. 458.

*Fort Street Union Depot Co.* v. *Backus,* 92 Mich. 33, relied upon by the city (appellee) is not in point. The question there was whether the Fort Street Union Depot Company could condemn the lands in question when it was shown it could condemn other lands for its purposes, then owned by another, a railroad company. In the instant case, the city already owns the "other lands," which the jury might consider were equally sufficient for the recreational purposes sought, thereby negativing the necessity for condemning the lands of the appellants.

This Court can not say how heavily the testimony which the trial judge refused to admit might have weighed in the balance, when the jury were considering the question of necessity. It should have been admitted. Nor do we pass upon the merits of the question whether there is any necessity for condemning the lands in question. That was for the jury. In view of this conclusion, other questions raised by appellants do not require consideration.

The verdict and subsequent confirmation are set aside and a new trial granted, with costs of this Court to appellants.

CARR, C. J., and BUTZEL, BUSHNELL, SHARPE, NORTH, and DETHMERS, JJ., concurred with BOYLES, J.